UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SPRINGER,

       Plaintiff,                              Hon. Richard Alan Enslen

v.                                              Case No. 5:04-CV-215

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## **REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age at the time of the ALJ's decision. (Tr. 15). He earned a General Educational Development (GED) diploma and worked previously as a machine operator. (Tr. 15, 74-77).

Plaintiff applied for benefits on December 12, 2001, alleging that he had been disabled since July 1, 2000, due to back pain and mental impairments. (Tr. 41-43, 65). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 28-40). On December 4, 2003, Plaintiff appeared before ALJ Lawrence Blatnik, with testimony being offered by Plaintiff and vocational expert, Sandra Steele. (Tr. 253-303). In a written decision dated June 17, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 14-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**MEDICAL HISTORY**

On December 14, 2001, Plaintiff completed a questionnaire regarding his activities. (Tr. 183-86). Plaintiff reported that he cooks, washes dishes, vacuums, shops, reads, watches television, attends movies, and visits with friends and relatives. *Id.* Plaintiff also reported that he talks on his CB radio and rides his bicycle everyday. (Tr. 185). On December 27, 2001, Plaintiff's cousin completed a questionnaire regarding Plaintiff's activities, to which she provided similar responses. (Tr. 85-90).

On January 12, 2002, Plaintiff participated in a consultive examination performed by Dr. Theodore Tangalos. (Tr. 115-18). Plaintiff reported that he was experiencing low back pain which radiated into his lower extremities. (Tr. 115). Plaintiff also reported that he had been experiencing "a lot of stress" after being "pulled over for drinking and driving." (Tr. 116). The examination revealed no evidence of bony deformities, edema, or joint abnormalities. (Tr. 117). Plaintiff exhibited full range of motion in his dorsolumbar spine. He experienced no difficulty squatting, hopping, heel/toe walking, or getting on/off the examination table. Plaintiff exhibited intact motor and sensory function and his reflexes were present and symmetrical. *Id.*

On February 27, 2002, Plaintiff participated in a consultive examination conducted by Anne Kantor, M.A. (Tr. 152-57). Plaintiff reported that he was experiencing "a lotta problems mentally and physically." (Tr. 152). He indicated that his back hurt and that "sometimes" he did not like to be around people. *Id.* Plaintiff reported that he used to drink ever day, but does not drink "very often now." (Tr. 153). Plaintiff reported that he used to use illegal drugs, but had not used marijuana in "about a year, and it's been longer since [he] smoked crack cocaine." He also reported that he had been jailed "thirteen or fourteen times" for various offenses involving alcohol and illegal

4

drugs. *Id.* The results of a mental status examination were unremarkable. (Tr. 154-56). Plaintiff was diagnosed with (1) a history of drug and alcohol abuse and (2) an anxiety disorder. (Tr. 157). His GAF score was rated as 55.[1] *Id.*

On March 29, 2002, Dr. Eva Ettedgui completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 158-72). Determining that Plaintiff suffered from an anxiety disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.06 (Anxiety Disorders) of the Listing of Impairments. (Tr. 159-67). The doctor did not assess whether Plaintiff's condition satisfied any of the Part B criteria for this particular impairment. (Tr. 168).

Dr. Ettedgui also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 173-74). Plaintiff's abilities were characterized as "moderately limited" in five categories. With respect to the remaining 15 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.* The doctor concluded that Plaintiff was capable of performing "simple work activities" in a "low stress work environment." (Tr. 175).

On December 6, 2002, Plaintiff participated in a pulmonary function test, the results of which revealed that he suffered from "moderate" obstructive airways disease. (Tr. 216). X-rays of Plaintiff's chest, taken the same day, revealed no evidence of emphysema, interstitial lung disease, or mass. (Tr. 200).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

5

On December 9, 2002, Plaintiff participated in an overnight polysomnography study, the results of which revealed that he suffered from "mild" obstructive sleep apnea. (Tr. 210).

On December 17, 2002, Plaintiff participated in an arterial doppler examination of his lower extremities, the results of which revealed no evidence of "significant hemodynamic occlusive disease." (Tr. 197).

X-rays of Plaintiff's lumbosacral spine, taken on January 27, 2003, were "unremarkable" with no evidence of fracture, malalignment, atherosclerotic calcifications, disc space abnormality, or soft tissue abnormality. (Tr. 195).

On February 6, 2003, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed: (1) "small to moderate" central disc herniation at L4-L5, and (2) "small" central disc herniation at L5-S1 with "mild/minimal" mass effect on the S1 nerve roots. (Tr. 188). The examination also revealed that the alignment of Plaintiff's lumbosacral spine was "intact" and the vertebral body height was "maintained." *Id.*

On April 2, 2003, Plaintiff was examined by Dr. Jeffrey Russell. (Tr. 235-36). Plaintiff reported that he was experiencing mood swings and difficulty sleeping. (Tr. 235). Plaintiff was diagnosed with bi-polar disorder and prescribed medication. (Tr. 236).

Plaintiff was examined by Dr. Russell on April 28, 2003. (Tr. 229-30). Plaintiff reported that he was sleeping better, experiencing less agitation and irritability, and better mood stabilization. (Tr. 229). The doctor reported that Plaintiff was "doing much better." *Id.*

On August 11, 2003, Plaintiff was examined by Dr. Russell. (Tr. 223-24). Plaintiff reported that he sleeps "well" so long as he takes his medication. (Tr. 223). He also reported that he had been "fairly active" and was experiencing less irritability and agitation. *Id.*

6

At the administrative hearing Plaintiff testified that he was experiencing a "little bit" of pain in his lower back. (Tr. 274). Plaintiff reported that he can walk "a few blocks," stand for 10-15 minutes, sit for 15 minutes, and lift 20-30 pounds. (Tr. 276-77). He also testified that he occasionally rides his bicycle for "a few miles." (Tr. 284). Plaintiff testified that he does not experience any side effects from his medications. (Tr. 278). Plaintiff reported that a "couple times a week" he consumes a "couple" of 24 ounce beers. (Tr. 279). He reported that he has not used cocaine in "years" and has not used marijuana in "probably a year." *Id.*

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

7

impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

## B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) degenerative disc disease and herniated discs of the lumbar spine, (2) bipolar disorder, (3) an anxiety disorder, and (4) a history of alcohol abuse. (Tr. 17). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 17-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning

capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he cannot lift more than 20 pounds at one time or 10 pounds frequently, (2) he cannot stand or walk more than two hours during an 8-hour workday, (3) he cannot climb ladders, scaffolds, or ropes, (4) he can only occasionally stoop, crouch, kneel, crawl, bend, twist, turn at the waist, or climb stairs/ramps, and (5) he requires a sit/stand option. (Tr. 19).

With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences mild to moderate restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and has never experienced episodes of deterioration or decompensation in work or work-like settings.

Accordingly, the ALJ concluded that Plaintiff was relegated to the performance of simple, unskilled work that involves no more than one to three step instructions. The ALJ concluded that Plaintiff cannot perform work which requires him to take initiative or make independent decisions. *Id.* The ALJ further concluded that Plaintiff cannot work in an environment that required him to be in close proximity to others, more than brief and superficial contact with the public, or more than minimal contact with (or directions from) a supervisor. (Tr. 19-20). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sandra Steele.

In assessing Plaintiff's RFC, the ALJ determined that Plaintiff suffered from various limitations, both exertional and nonexertional. The ALJ posed to the vocational expert several hypothetical questions in an effort to determine whether there existed a significant number of jobs which Plaintiff could perform despite his limitations. In response to hypothetical questions including all of the limitations articulated in Plaintiff's RFC, except for the requirement that Plaintiff not work in close proximity to others, the vocational expert testified that there existed approximately 30,300 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 292-96). The vocational expert subsequently testified, however, that the jobs that she identified would require Plaintiff to work in "fairly close proximity to others." (Tr. 300-01).

As part of his RFC determination, the ALJ determined that Plaintiff "could not work in an environment that entailed being in close proximity of others." The vocational expert testified that the jobs she had previously identified (in response to hypothetical questions) would have required Plaintiff to work in "fairly close proximity to others" contrary to the ALJ's RFC determination. In other words, the vocational expert failed to identify any jobs which Plaintiff can perform consistent with his RFC. Accordingly, the ALJ's conclusion (based on the vocational expert's testimony) that there exist a significant number of jobs which Plaintiff can perform despite his limitations is not supported by substantial evidence.

b. Evidence of Plaintiff's disability is not compelling

While the ALJ's decision is not supported by substantial evidence, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling).

While the ALJ's decision fails to comply with the relevant legal standard, neither is the evidence of Plaintiff's disability compelling. The objective medical evidence fails to reveal that Plaintiff suffers from a disabling impairment. Moreover, Plaintiff's subjective complaints are not supported by the record. Nonetheless, the Court cannot overlook the fatal flaw in the ALJ's decision. Accordingly, this matter must be remanded to the Commissioner for consideration of this (and any other relevant) issues.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: January 30, 2006                               /s/ Ellen S. Carmody
                                                    ELLEN S. CARMODY
                                                    United States Magistrate Judge